United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RANDY REYNALDO REYES,

    Plaintiff,

v.

W.A. DUNCAN, Warden, Salinas Valley State Prison,

    Defendant.

No. C 05-04078 SI

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Now before the court is Randy Reynaldo Reyes's petition for writ of habeas corpus concerning his 2001 murder conviction in San Mateo County Superior Court. Having carefully considered the papers submitted, and for good cause appearing, the Court DENIES the petition.

**BACKGROUND**

On the morning of April 24, 1999, the dead body of William Tejada was found on a path near the M.P. Brown School in Daly City, California. His body had numerous injuries, including abrasions, contusions, and approximately 44 stab wounds. An investigation later revealed that Tejada had been beaten and stabbed to death by a pack of individuals associated with the Daly City Locos ("DCL") street gang.

Shortly after Tejada's death, petitioner and his co-defendant, Juan Ruiz, were arrested and charged with murder. The prosecution's theory was that Ruiz had been the primary attacker and that petitioner had participated in the attack by holding down Tejada's legs. The case was tried before a jury, and, in August 2001, both petitioner and Ruiz were convicted of Tejada's murder.

Petitioner now contends that his conviction violated his constitutional rights because he was not allowed to use in his defense a confession that Ruiz made to the police. Petitioner also argues that he was denied his right to have counsel present at all stages of his trial.

**I.  Factual History**

The evidence presented at the joint trial of Reyes and Ruiz is as follows. Following a shooting in San Francisco in January 1999, the police interviewed Tejada, who identified Manuel LaFontaine as the shooter. LaFontaine was a member of the DCL gang, but Tejada did not categorize himself as a gang member.

The detective who took Tejada's statement explained to him that once LaFontaine was arrested he would have access to the police records and that Tejada would be named as having identified LaFontaine in those records. At petitioner's trial, the detective testified that "snitching" was forbidden among gang members and often those that cooperated with the police were violently retaliated against. As a consequence of "snitching" to the police, a member could be subjected to assault or even death.

On April 23, 1999, Tejada went to a party at the M.P. Brown School in Daly City. Some of the people who attended the party were DCL members. One witness, DCL member Alex Obregon, left the party to go to McDonald's. On route back to the party, Reyes and Ruiz picked up Obregon. Obregon testified that, while they were in the car, Ruiz stated that they would deal with Tejada that night. Obregon took this to mean that Tejada was going to be "jumped out" of the gang – Tejada would be ejected from DCL by being beaten up without weapons.

Edgar Hernandez, a DCL member who was also charged with Tejada's murder and who testified against Reyes and Ruiz as a condition of his plea bargain agreement, was in a group of other DCL members at the party also discussing how to punish Tejada. Hernandez testified that, when an unidentified person suggested that Tejada be "jumped out," Ruiz responded that "he wasn't going to buy that plan." Hernandez suggested that a person who was aspiring to become a member of the gang fight Tejada in a one-on-one fight as a means to jump himself into the gang while jumping Tejada out. No plan was adopted by the time Hernandez left the group.

At approximately 10:30 p.m., Tejada was attacked by the DCL gang members. The California

2

1  Court of Appeal summarized the attack on Tejada as follows:

> About 10:30 p.m., people started leaving the school grounds. Hernandez and a number of other gang members were walking down the pathway out of the school when Hernandez saw Ruiz grab Tejada by the neck and take him to the ground. Four others, including Reyes, began hitting and kicking Tejada. He saw Reyes crouching down and thought he might be holding Tejada's legs. Although Hernandez denied seeing any weapons, he admitted that he had previously told the police that he saw Ruiz using a knife. He explained that when he initially talked to the police he thought he had seen a knife, but in fact he had not. Hernandez joined the attack and kicked Tejada twice in the legs, but he left before the attack was over.
>
> Obregon testified that as he and Tejada were leaving the school, Ruiz grabbed Tejada and took him to the ground. The others began kicking and punching Tejada while Reyes was holding his legs. Obregon testified that after watching the attack for a short while, he was chased away by Reyes and other members of the gang. Obregon was impeached during cross-examination with prior inconsistent statements he made to the police and with the acknowledgment that he had lied at the preliminary hearing. Obregon admitted that he had testified at the preliminary hearing that it was too dark to see any faces and he could not remember who surrounded Tejada at the time of the attack.
>
> Nester Silva, who was with Hernandez, testified that he watched the attack for a few minutes before heading to Hernandez's car, and that he saw a sharp object that "looked like a blade" dropped by or near Ruiz. When [Silva] met Hernandez at his car, Hernandez said that he had not expected the assault to go so far and that he had not known that Tejada would be "shanked." On cross-examination Silva acknowledged that it was dark at the time of the attack and he could not see who was kicking Tejada.
>
> On the morning of April 24, 1999, Tejada's dead body was found on the path near the school. His body had many injuries, including abrasions, contusions, and numerous stab wounds. Some of the stab wounds had been inflicted with a knife and some possibly with a screwdriver. Approximately 44 were to the neck and head, including Tejada's eyes. The immediate cause of his death was venous air embolism, caused by two wounds to his jugular vein. Other concurrent blunt, sharp, and penetrating injuries also contributed to Tejada's death.
>
> When the police first interviewed Ruiz on April 27, he told them that Reyes had picked him up that evening about 9:00 p.m. and drove around various parts of San Francisco and the Peninsula looking to pick up girls. Reyes [the petitioner] told police the same story when he was interviewed later that day.

Petition, Exh. A at 4-5.

Reyes's sister testified that he was a full-time college student at a community college and that she had no knowledge of her brother being in a gang. Former DCL members testified that Ruiz was not a DCL member and had been distancing himself from the gang.

## II.     Ruiz's Statement to the Police

On April 27, 1999, Ruiz confessed to killing Tejada in a taped interview with Daly City Police

3

Detective Bill Thompson. As a part of his confession, Ruiz also stated that Reyes held down Tejada's legs during the attack.

As discussed earlier, Ruiz initially stated that he was in Reyes's car driving around San Francisco and the Peninsula on the night of the murder. Detective Thompson informed Ruiz that the other people who had been arrested, including Reyes, had implicated Ruiz and that Ruiz could face a charge of first degree murder with special circumstances. Ultimately, Detective Thompson stated that he believed Ruiz intended to kill the victim and that Ruiz would face capital punishment. Shortly thereafter Ruiz asserted his right to counsel. Although Detective Thompson ceased questioning Ruiz at that point, he again expounded on the likelihood that Ruiz would receive the death penalty. *See* Answer, Exh. A at 274-358.

Roughly two hours later, Ruiz requested to speak with Detective Thompson again. He waived his request for an attorney and stated that he had changed his mind and had decided to cooperate with the police because of fears of capital punishment or life incarceration. Answer, Exh. A at 404. During this taped second session, Ruiz provided a graphic account of how he murdered Tejada by stabbing him with a knife and a screwdriver and also attempted to break his neck. Additionally Ruiz stated that Reyes attempted to persuade him not to harm the victim prior to the attack because of the concentration of people and the public location of the school. During the attack, Ruiz thought Reyes was holding the victim's legs down, but it was dark. *Id.* at 358-403.

After the attack, Ruiz stated that Reyes drove some of the participants to the beach. There they burned their clothes, and Ruiz disposed of the knife. Reyes left the beach to drive two juveniles home. Reyes then returned to the beach to pick up Ruiz and one or two other persons, and they all returned to the scene of the attack. There, they examined the victim's body and looked for a missing pen that might have been used in the stabbing. Answer, Exh. A at 361-390.

Ruiz also stated that in the day following the attack, he spoke with Reyes about being unable to keep his mind off the events of the previous night. Ruiz stated that Reyes's response was "You still think' about that shit?" to which Ruiz responded "Yeah, mother fucker because I'm the one who got my hands dirty. I didn't see you with fuckin' blood all over you. You mighta been there, doesn't mean you fuckin' did it." Answer, Exh. A at 393.

4

Immediately following the interview, Ruiz and Hernandez were transported together in a police vehicle. At that time, a police officer overheard Ruiz make a statement to Hernandez regarding what he had divulged to the detective.

### III.  Procedural History

Reyes was charged with one count of murder (Cal. Pen. Code § 187) for the death of Tejada.[1] The State alleged that Reyes committed the murder by means of torture (Cal. Pen. Code § 190.2(a)(18)) and for the benefit of a street gang (Cal. Pen. Code § 186.22(b)(1)). Ruiz was charged as Reyes's co-defendant and was charged with the same crimes with the further allegation of use of a deadly weapon (Cal. Pen. Code § 12022(b)(1)). Hernandez was also charged with the petitioner and Ruiz. Both the petitioner and Ruiz pled not guilty.

Because the prosecution intended to use Ruiz's confession against him at trial, it moved to sever the trial of Ruiz from Reyes.[2] Reyes did not challenge the severance. In his response to the severance motion, "Reyes decline[d] to stipulate that . . . the statement of defendant Ruiz may be used in its entirety at Mr. Reyes's trial." Ans., Ex. A at 124-25.

The trial court granted the severance of Ruiz, while Reyes and Hernandez remained co-defendants. Subsequently, Hernandez accepted a plea bargain. He pled guilty to assault with a deadly weapon and received a sentence of 365 days in addition to time already served. Hernandez then testified as a witness for the prosecution.

Following the severance, Ruiz filed a pretrial motion to suppress his statements made to police. He argued that the police had coerced him into waiving his *Miranda* rights and ultimately into confessing to the crime. Ruiz called Dr. Richard Leo as an expert in interrogations and false

---

[1] Reyes was also charged with one count of dissuading a witness by means of force or threat of force (Cal. Pen. Code § 136.1(c)(1)). That charge is not relevant to the Court's analysis.

[2] The prosecution moved for a severance in order to protect Reyes's right to confrontation if Ruiz chose not to testify. *See Bruton v. United States*, 391 U.S. 123 (1968) (holding that inclusion of non-testifying co-defendant's confession that facially implicated the defendant in a joint trial violated the defendant's Sixth Amendment right to confrontation); *People v. Aranda*, 63 Cal. 2d 518 (1965) (establishing procedural guidelines for the prosecution's admission of out-of-court statements made by a defendant implicating his co-defendant), *superceded in part by* Cal. Const., art. I, § 28(d).

5

confessions. Dr. Leo testified that the detective's language, specifically his comments about Ruiz facing the death penalty, were coercive and that Ruiz's confession was therefore involuntary. The court excluded Ruiz's statement on May 9, 2001. Five days later, the court also suppressed the statements made by Ruiz to Hernandez in the police vehicle following Ruiz's interview, citing the prior coercion finding.

Since the State could no longer utilize Ruiz's confession, the prosecution moved to reconsolidate the two trials. Petitioner objected to the reconsolidation on the grounds that the defense planned to use Ruiz's statements to demonstrate that Reyes was not the stabber. Based on his right to present a defense, Reyes argued that he was entitled to present Ruiz's confession as a declaration against penal interest. The court found that the trials could be reconsolidated because Ruiz's confession was inadmissible. The court based its decision on two grounds. First, the court found that the statement was coerced and was therefore not trustworthy. Second, the Court found that Ruiz's admission was not relevant to Reyes's defense because the prosecution conceded that Reyes was not the actual stabber.

Prior to the commencement of the joint jury trial, the prosecution moved to introduce the portion of Ruiz's statement taken before police coercion, in which Ruiz denied being at M.P. Brown School on the night of the crime. Petitioner argued that if a portion of Ruiz's statement was admitted, the entire statement must be admitted under California Evidence Code § 356. The court granted the prosecution's motion, reasoning that Ruiz's initial statement could be admitted because it was made prior to the coercion. The court reaffirmed its decision holding that the remainder of Ruiz's statement could not be admitted because it was involuntary and untrustworthy.

The jury found Reyes guilty of second degree murder and of the lesser included offense of dissuading a witness without force or threat. Ruiz was found guilty of first degree murder. The allegation that the crimes were committed for the benefit of a gang was found to be true, but the crimes were not found be committed by means of torture.

Reyes filed a motion for a new trial, which was denied. The court sentenced Reyes to fifteen years to life for the second degree murder conviction to be served with a consecutive term of two years for the dissuading a witness conviction. With the prosecution's consent, the court struck the gang allegation.

6

Petitioner filed a timely appeal. He argued that the trial court had abused its discretion by excluding Ruiz's confession from his trial. He also argued that his Sixth Amendment right to counsel was violated when the trial court relied on evidence received in his absence at the hearing on Ruiz's motion to suppress his confession. The Court of Appeal affirmed Reyes's conviction, finding that the trial court did not abuse its discretion in excluding Ruiz's confession and that Reyes had waived his Sixth Amendment claim by failing to make the necessary objection to the trial court. Petition, Exh. A at 21, 26-27. On July 21, 2004, the Supreme Court of California denied Reyes's petition for review without decision. On October 11, 2005, petitioner filed this action.

**LEGAL STANDARD**

This Court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

**DISCUSSION**

Reyes's habeas petition raises two issues. First, Reyes contends that the state court unreasonably

7

disposed of his claim that he was denied the right to have his counsel present at all critical stages of his trial.  Second, he claims that the state court erred in excluding Ruiz's confession.

**I.    Right to Counsel**

Reyes contends that he was denied his right to have counsel present at all critical stages of his trial. *See, e.g.*, *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) ("It is now accepted, for example, that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings . . . ."). Petitioner bases this claim on the fact that the suppression hearing on Ruiz's confession was conducted while the Reyes and Ruiz trials were still severed. Thus, Reyes never had the opportunity to respond to evidence presented at the hearing. Because the trial judge expressly relied on evidence from that hearing when he decided to exclude Ruiz's confession, Reyes argues that his Sixth Amendment rights were violated.

Respondent argues that Reyes is procedurally barred from raising this claim because Reyes failed to object on this ground after the trials were reconsolidated. The procedural default doctrine forecloses review of a petitioner's habeas claims when those claims were rejected in state court based on an adequate and independent state procedural bar. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The grounds for the procedural bar must explicitly and independently rely on state law. *See id.* at 735; *Harris v. Reed*, 489 U.S. 255, 265 (1988). If the basis of the decision is interwoven with federal law or if a federal law question is a threshold analysis to a state's procedural bar, there is no independent basis for the procedural bar, and the petitioner can seek relief of his habeas claims in federal court. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). In order for the procedural bar to be adequate, the bar must be clear, consistently applied, and well established at the time of the alleged default. *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996).

Under California law, the failure to object to the admission of evidence results in a waiver of that objection. *See* Cal. Evid. Code § 353; *People v. Williams*, 16 Cal. 4th 153, 250 (1997). The California "contemporaneous objection rule" requires an objection at the time of trial to preserve an issue for appeal. *See Melendez v. Pliler*, 288 F.3d 1120, 1124-25 (9th Cir. 2002). This procedural rule rests solely on state law and serves as an adequate state bar. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (expounding that a state's contemporaneous objection rule serves to procedurally bar a habeas claim);

8

*Melendez*, 288 F.3d at 1125 ("We held more than twenty years ago that the rule is consistently applied when a party has failed to make any objection to the admission of evidence.")

In the state trial court, while the trials were still severed, the court suppressed the Ruiz confession after a hearing. Subsequently, upon the reconsolidation of the trials, the trial judge stated that he would consider testimony received at the suppression hearing. At that time, Reyes made no objection, nor did he request to recall any witnesses from the suppression hearing for further cross-examination on the matter. Petition, Exh. A. at 27.

On appeal, Reyes raised the argument he raises here – that he had a right to have his counsel present at the suppression hearing. The appellate court ruled that the petitioner had waived the claim. In arriving at this conclusion, the appellate court determined that the petitioner's failure to object, or even to request the witnesses at the suppression hearing be recalled for cross-examination, constituted a waiver. The appellate court explicitly held that "[s]ince Reyes did not object to the court's reliance on the testimony from the prior suppression hearing, his argument is waived on appeal." *Id.*; *see also Harris v. Reed*, 489 U.S. 255, 265 n.12 (1989) (instructing state courts to utilize a plain statement when procedurally barring a claim). This resulted in a procedural bar. *Melendez*, 288 F.3d at 1125.

Reyes argues that the appellate court's review of the state court's decision was on the merits. When a state court addresses the issue on the merits, federal review is not foreclosed by the procedural state ruling. *Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991). Notwithstanding the appellate court's phrasing in its opinion that "Reyes's argument lacks merit[,]" the state court made no further mention of the merits of petitioner's claim. Petition, Ex. A at 27. The appellate court's use of the word "merit" is insufficient grounds for the permission of federal review. Furthermore, as mentioned above, the Court of Appeal expressly held that Reyes's claim was foreclosed due to a procedural bar. Thus, the Court concludes that Reyes's right to counsel claim has been procedurally defaulted.

## II. Exclusion of Ruiz's Confession

Reyes's second ground for relief is his contention that Ruiz's confession was improperly excluded from the trial. The trial court found that the confession was both of little probative value and

9

unreliable and excluded the confession.[3] The appellate court agreed that Ruiz's confession was unreliable and affirmed the trial court. Reyes contends that both determinations were unreasonable.

Petitioner's argument is based on *Chambers v. Mississippi*, 410 U.S. 284 (1973), in which the Supreme Court considered the extent to which a state court could exclude hearsay evidence under state evidentiary rules. *Id.* at 298-302. The Court held that, if the hearsay evidence was both critical to the defense and maintained "persuasive assurances of trustworthiness," the defendant must be allowed to present the evidence at trial. *Id.*; *see also id.* at 302 ("[T]he hearsay rule may not be applied mechanistically to defeat the ends of justice."); *Lilly v. Virginia*, 527 U.S. 116, 130 (1999) (opinion of Stevens, J.); *Green v. Georgia*, 442 U.S. 95, 97 (1979); *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004) ("It is clearly established federal law, as determined by the Supreme Court, that when a hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the exclusion of that statement may rise to the level of a due process violation.").

Reyes has raised serious questions about the degree to which the state court's reliability determinations complied with *Chambers*. To begin with, the trial court based its reliability determination on a standard derived from *Idaho v. Wright*, 497 U.S. 805 (1990). *Wright*, however, concerned the circumstances under which *the prosecution* could avoid the Confrontation Clause and use an out-of-court statement of a non-testifying witness against a defendant. *See id.* at 813-14. As petitioner points out, the *Wright* test of reliability appears to be much more demanding than the test used when *the defendant* seeks to introduce hearsay evidence in his defense. *Compare Wright*, 497 U.S. at 820 ("In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission

---

[3]The trial court excluded the confession under California Evidence Code § 1230, which provides:

> Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true.

Cal. Evid. Code § 1230.

of the statement at trial."), *with Chambers*, 410 U.S. at 302 (requiring only "persuasive assurances of trustworthiness").[4]

The Court of Appeal purported to fix this error by citing to *Chambers* and its progeny, but its decision is also problematic. Most significantly, the Court of Appeal failed to fully consider the full range of evidence that corroborated Ruiz's testimony. Instead, it stated that "[t]he trustworthiness of the statement must be judged not on its corroboration by other evidence, but on the circumstances surrounding the making of the statement." Petition, Exh. A at 25. This proposition, however, which stems directly from *Idaho v. Wright*,[5] is directly contrary to the Supreme Court's analysis in *Chambers*. *See Chambers*, 410 U.S. at 300 ("[E]ach [out of court statement] was corroborated by some other evidence in the case – McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon."); *see also Chia*, 360 F.3d at 1006 ("The credibility and worth of each assertion made by Wang to the authorities is further enhanced by their consistency with the independent observations of the DEA agents."). Here, the trial court acknowledged that "much of the Ruiz statement is supported by other evidence in the case." Petition, Exh. A at 22. Thus, it appears that the Court of Appeal failed to consider significant evidence of the confession's trustworthiness.

Based on the above, the Court concludes that petitioner has raised serious questions concerning whether the state courts unreasonably applied federal law. Ultimately, however, the Court need not decide whether the state courts' analysis was reasonable. The California Court of Appeal held that the exclusion of Ruiz's confession was "harmless beyond a reasonable doubt." Petition, Exh. A at 28. As with other state court findings, this determination is entitled to deference. The Ninth Circuit expressed this point in *Inthavong v. Lamarque*, 420 F.3d 1055 (9th Cir. 2005):

> The California Court of Appeal held that admitting the confession did not harm

---

[4]The California appellate court noted that the precise relationship between the two tests was uncertain, citing to a number of California appellate decisions that have used the two tests interchangeably. *See* Petition, Exh. A at 24 n.13.

[5]The Court of Appeal cited to *People v. Greenberger*, 58 Cal. App. 4th 298, 336 (1997), for the proposition. *Greenberger*, in turn, cited to *Wright*.

11

> Inthavong. Since *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003), it has been clear that under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we must defer to such holding unless it was in "conflict with the reasoning or the holdings of [Supreme Court] precedent" or if it "applied harmless-error review in an 'objectively unreasonable' manner." *Id.* at 17, 18, 124 S.Ct. 7; *see also Medina v. Hornung*, 386 F.3d 872, 878-79 (9th Cir.2004).

*Id.* at 1058-59. The Court cannot conclude that the Court of Appeal's harmless error determination was unreasonable.

The Court of Appeal found that the exclusion of Ruiz's confession was harmless beyond a reasonable doubt because of the limited probative value of the confession:

> While Ruiz's statement did indicated that Reyes had initially urged that Tejada not be attacked at that time, it went on to state that Reyes ultimately did participate by holding Tejada's legs. The confession made explicit that it was Ruiz (and thus not Reyes) who wielded the weapons during the fatal attack, but Reyes was not charged with having personally used a deadly weapon and there was never any suggestion during the course of the trial that he had done so. The fact that the jury convicted Reyes of murder in the second degree while finding Ruiz guilty of first degree murder confirms that the jury distinguished between the role played by the two defendants, and there is nothing in Ruiz's confession that would have tended to reduce the degree of Reyes's responsibility any further. Indeed, when the prosecution moved for separate trials because the use of Ruiz's confession was anticipated, Reyes' attorney acquiesced, saying nothing to suggest that Reyes wanted to introduce the confession in his own defense, which would have made the severance unnecessary. It was not until the confession had been suppressed that Reyes first made such a suggestion, in support of his opposition to the reconsolidation of the two cases for a single trial. While this sequence certainly suggests that Reyes was seeking separate trials rather than use of the confession, it is clear in all events that introduction of the confession would not have aided Reyes's defense.

Petition, Exh. A at 28-29.

Petitioner argues that three aspects of Ruiz's confession render the California Court of Appeal's analysis unreasonable. First, petitioner points to Ruiz's statement that Reyes tried to dissuade him from attacking Tejada. The basis for Reyes's efforts, however, was that there were too many people around; there was no evidence that Reyes did not want the attack to go through at another time. Further, the actions Reyes later took, as described in Ruiz's confession, contradict any inference that he did not want the attack to go through. For example, Ruiz stated that Reyes drove some of the DCL members to the beach after the attack, where they "burned their clothes," and that Reyes later drove them back to the school to examine Tejada's body. The day after the attack, according to Ruiz, Reyes said to him "You still thinkin' about that shit?" These actions are inconsistent with petitioner's self-portrayal as someone opposed to the attack, and therefore significantly weaken any probative value of Ruiz's statement that

12

petitioner tried to dissuade him from attacking Tejada.

Petitioner also argues that the California Court of Appeal's analysis was unreasonable because Ruiz's confession established that Ruiz alone had inflicted the fatal wounds. But, as the Court of Appeal recognized, this was wholly consistent with the prosecution's theory of the case. It is also consistent with the jury's decision to find Reyes guilty of a lesser degree of murder than Ruiz. Finally, petitioner argues that Ruiz's comment that "I didn't see you with fuckin' blood all over you" wholly exculpates him. Again, however, this comment is fully consistent with the prosecution's theory of the case – that Ruiz committed the actual murder but that a number of individuals, including Reyes, helped him do it.

Thus, petitioner has not convinced the Court that it was unreasonable for the Court of Appeal to determine that exclusion of the confession was harmless beyond a reasonable doubt. Allowing Ruiz's confession would have been only of marginal benefit to the defense, and, given that Ruiz stated that Reyes held down Tejada's legs, may actually have been detrimental. Accordingly, the petition for writ of habeas corpus is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES the petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: August 30, 2006

SUSAN ILLSTON
United States District Judge